J-S09019-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF L.A.G.G., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: P.T., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2984 EDA 2016 |

Appeal from the Decree entered August 5, 2016
In the Court of Common Pleas of Montgomery County
Orphans' Court at No: No. 2016-A0072

BEFORE: SHOGAN, STABILE, and PLATT[*], JJ.

MEMORANDUM BY STABILE, J.: **FILED APRIL 12, 2017**

P.T. ("Father") appeals from the August 5, 2016 decree involuntarily terminating his parental rights to his son, L.A.G.G. ("Child"), born in December of 2011.[1] We affirm.[2]

The record reveals the factual and procedural history as follows. In October of 2013, the Montgomery County Office of Children and Youth ("the Agency") received a referral regarding this family due to concerns of

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court involuntarily terminated the parental rights of W.G. ("Mother") by separate decree dated August 5, 2016. Mother did not file a notice of appeal.

[2] We observe that the guardian *ad litem* filed a brief in support of the decree involuntarily terminating Father's parental rights.

Mother's mental health and Child's development. N.T., 7/13/16, at 133. The Agency implemented in-home services for Mother and Child. *Id.* at 134.

Child has a twenty-five percent delay in his speech, fine motor skills, and cognitive abilities. N.T., 7/13/16, at 15. He has an Individualized Education Program ("IEP"), and he receives occupational and speech therapy. *Id.* at 168-169. On October 14, 2014, Child was adjudicated dependent, and he was placed in a foster home. *Id.* at 154.

Throughout the history of this case, Father alleged that he resided in the State of Delaware. Child never lived with him. Father met Child for the first time at a supervised visit in April of 2015, following testing that established his paternity in February of 2015. N.T., 7/22/16, at 48; N.T., 7/13/16, at 170-171, 190.

On March 11, 2016, the Agency filed a petition for the involuntary termination of Father's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (8), and (b). The orphans' court held a hearing on July 13 and 22, 2016. The Agency presented the testimony of Deborah L. Shanley, the Administrative Assistant and Director of Medical Records at Montgomery County Emergency Service; Lori Sheetz, the case manager service coordinator at the Montgomery County Intermediate Unit; and Gwen

Damiani, the Agency caseworker. Father testified on his own behalf, and he presented the testimony of his aunt, E.R.G. ("Paternal Aunt").[3]

By decree dated and entered on August 5, 2016, the orphans' court involuntarily terminated Father's parental rights. Father timely filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).

On appeal, Father presents the following issues for our review:

(1) Whether the [o]rphans' [c]ourt erred when it determined the existence of clear and convincing evidence that Father failed to perform any parental duties for a period of more than 6 months prior to the filing of the Petition for Termination of Parental Rights?

(2) Whether the [o]rphans' [c]ourt erred in terminating Father's parental rights when it determined the existence of clear and convincing evidence that Father did not produce sufficient evidence of his efforts to fulfill Family Service Plan goals?

(3) Whether the [o]rphans' [c]ourt erred when it determined the existence of clear and convincing evidence that the family member nominated by Father to serve as caregiver to [Child] was unable to deal with life stressors and the [C]hild's needs simultaneously?

(4) Whether the [o]rphans' [c]ourt erred when it determined the existence of clear and convincing evidence that Father was

_____

[3] In addition, the Agency presented testimony from the following witnesses with respect to the petition for the involuntary termination of Mother's parental rights: Stephen D. Miksic, Ph.D., who performed a psychological evaluation of Mother, and Dr. Alan D. Sofranko, the attending physician of the Forensic Assertive Community Treatment Team, where Mother received mental health treatment. Mother did not testify, but she presented the testimony of Danielle Haydt, an employee at the Penn Foundation who provided the transportation for supervised visits between her and Child.

unable to affirmatively assert parental efforts to establish a bond with [Child]?

(5) Whether the [o]rphans' [c]ourt erred when it determined the existence of clear and convincing evidence of termination of Father's parental rights under 23 Pa.C.S.A. § 2511(a)(8)?

(6) Whether the [o]rphans' [c]ourt erred when it determined the existence of clear and convincing evidence that the termination of Father's parental rights best serves the needs and welfare of [Child]?

(7) Whether the [o]rphans' [c]ourt erred when it determined the existence of clear and convincing evidence that the termination of Father's parental rights will not irreparably harm [Child]?

Father's Brief at 3.

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938, which requires a bifurcated analysis.

Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

We need only agree with the orphans' court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re*

*B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). In this case, we conclude that the certified record sustains the orphans' court's decision to terminate under Sections 2511(a)(2) and (b), which provide as follows.[4]

> **(a) General Rule**.—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions

---

[4] Based on this disposition, we need not consider Father's first and fifth issues which involve Section 2511(a)(1) and (8). However, it is important to note that Section 2511(a)(8) does not provide a basis for termination of Father's parental rights because Child was not removed from Father's care at the time of his placement. Indeed, during his life, Child has never been in Father's care. *See In re C.S.*, 761 A.2d 1197 (Pa. Super. 2000) (*en banc*) (stating that Section 2511(a)(5) and (8) did not provide a basis for terminating the father's parental rights when he was incarcerated at the time of the child's removal from the mother's care).

described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

This Court has stated as follows.

In order to terminate parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). Further, we have stated, "[t]he grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct. To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties." *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

With respect to Section 2511(b), this Court has stated that, "[i]ntangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005) (citation omitted). Further, the trial court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id*. (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer

- 6 -

that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-763 (Pa. Super. 2008) (citation omitted).

Turning to Father's issues on appeal, he argues that the orphans' court erred by concluding that Father did not produce sufficient evidence of his efforts to fulfill his Family Service Plan ("FSP") goals. Father's issue is without merit.

Ms. Damiani, the Agency caseworker from January of 2014, up through the time of the subject proceedings, testified that Father's FSP goals required him to provide information regarding a supervision plan for Child, his schooling, and a plan for the special services he would receive as a result of his developmental delays. N.T., 7/13/16, at 174, 182. In addition, Father was required to provide proof of housing, employment, and a budgeting plan, as well as obtain a psychological evaluation. *Id.* Further, she testified that the Agency offered Father supervised visits with Child commencing on April 7, 2015. *Id.* at 190.

Ms. Damiani testified as follows on direct examination:

Q. Throughout the time that you've had the case, what has been Father's attitude about the [Agency's] involvement?

A. [Father] has been very resistant to just, you know, what things that we've asked, because he feels, like, it's not necessary.

Q. And has he expressed that to you, has he told you that?

A. Yes, yes.

Q. Has he told you that on more than one occasion?

A. Yes.

N.T., 7/13/16, at 173. She further testified on cross-examination that Father "has been very combative with me throughout the life of the case, constantly arguing with me when I try to work with him about things, telling me why it shouldn't be that way, why he doesn't agree with it." *Id.* at 224.

Ms. Damiani testified that, in March of 2016, the month that the Agency filed the involuntary termination petition, Father told her that "he wants [Child], but he said since he's been out of work, he's not progressed in what is required for [Child's] care." N.T., 7/13/16, at 194. Ms. Damiani testified that in the same month, March of 2016, Father sent her his paystubs *via* text message. *Id.* at 183. She testified that she requested Father to mail the paystubs to her because she was unable to view them clearly by text message, but Father did not comply. *Id.* In addition, *via* text message, in approximately June of 2016, the month before the subject proceedings, Father provided the name of the Bush School as a resource for Child. *Id.* at 184-185.

Ms. Damiani testified that Father did not complete a psychological evaluation. Further, Father did not provide her with housing or budget information. N.T., 7/13/16, at 184-185, 194. Moreover, she testified the Agency offered Father a total of 28 supervised visits with Child, commencing

on April 7, 2015, and Father attended twelve of them. *Id.* at 190. She testified that Father's last visit with Child was on November 23, 2015. *Id.*

In his brief on appeal, Father argues that he had difficulty attending the supervised visits at the Agency's office because (1) he had to either borrow a car or rely on others to transport him and (2) in May of 2015, he obtained temporary employment where he was required to work until 5:00 p.m. or 6:00 p.m. daily. Father's Brief at 18.

Based on the foregoing, we reject Father's assertion that the court erred in terminating his parental rights based on his efforts to fulfill his FSP goals. To the contrary, the record demonstrates that Father made minimal efforts to comply with his FSP goals. In fact, Ms. Damiani's testimony demonstrates that Father resisted complying with the requirements necessary for reunification with Child. To the extent that Father did not resist or argue with Ms. Damiani regarding his FSP goals, the evidence reveals that he was incapable of satisfying them.

We discern no abuse of discretion by the orphans' court in terminating Father's parental rights pursuant to Section 2511(a)(2). Ms. Damiani's testimony overwhelmingly demonstrates that Father's repeated and continued incapacity, neglect, or refusal to cooperate with the Agency and to satisfy his FSP goals has caused Child to be without essential parental care, control, or subsistence necessary for his physical or mental well-being.

Further, the causes of Father's incapacity, neglect, or refusal cannot or will not to be remedied.

Father argues in his fourth, six and seventh issues that the orphans' court abused its discretion in terminating his parental rights pursuant to Section 2511(b) because the Agency did not present any evidence regarding whether a bond existed between him and Child or the foster parents and Child, and the effect on Child of terminating his parental rights. We disagree.

This Court has held that courts considering termination of parental rights are not required by statute or precedent to order that an expert perform a formal bonding evaluation. *In re K.K.R.-S*., 958 A.2d 529, 533 (Pa. Super. 2008). In addition, we have explained that,

> in addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011).

In this case, there is no testimonial evidence that a parent-child bond exists between Father and Child. Child never lived with Father. The orphans' court found that Father has had "brief involvement in his child's life." Trial Court Opinion, 8/5/16, at 10. Indeed, Ms. Damiani testified that Father visited Child on only twelve occasions between April 7, 2015, and

November 23, 2015. N.T., 7/13/16, at 190. Ms. Damiani testified that Child will not suffer irreparable harm if Father's parental rights are terminated. *Id.* at 196. Thus, the evidence supports termination of Father's parental rights pursuant to Section 2511(b).

To the extent Father asserts that termination was improper because there is no record evidence of a bond between Child and his foster parents, we disagree. Father cites no statutory or case law providing that an agency must produce evidence of a parental bond between a child and his or her foster parents. In contrast, the Adoption Act provides, and our case law confirms, that a court may terminate parental rights without a pre-adoptive home being identified. *See* 23 Pa.C.S.A. § 2512(b) ("If the petitioner is an agency it shall not be required to aver that an adoption is presently contemplated nor that a person with a present intention to adopt exists."); *see also In re Adoption of B.J.R.*, 579 A.2d 906, 915 (Pa. Super. 1990) (stating that the fact that the record offers no indication that the agency has found a prospective adoptive family for minor does not serve to bar the involuntary termination of parental rights where such termination is otherwise warranted). Thus, we conclude it follows that the Agency was not required to aver the existence of a parental bond between Child and his foster parents where the evidence otherwise warranted the termination of Father's parental rights.

Furthermore, in this case, Ms. Damiani testified that Child's foster parents, with whom he was placed on May 12, 2016, two months before the subject proceedings, are a pre-adoptive resource. N.T., 7/13/16, at 166, 214. Although Ms. Damiani did not testify that a parental bond yet exists between Child and his foster parents, she testified that his foster parents "are very warm towards him, and . . . comfort him with hugs and play with him and make him feel very at home." *Id.* at 166. Ms. Damiani testified that Child's foster mother "is actually a speech pathologist by profession, and she is willing to and has been working with [Child]." *Id.* at 169. Ms. Damiani testified that Child's "speech and his vocabulary has definitely increased since he has been in that home." N.T., 7/22/16, at 15. As such, we discern no abuse of discretion by the orphans' court in concluding that terminating Father's parental rights will serve Child's developmental, physical, and emotional needs and welfare pursuant to Section 2511(b).

Finally, Father argues that the orphans' court erred in determining that Paternal Aunt, who was "nominated by Father to serve as caregiver to [Child,] was unable to deal with life stressors and the Child's needs simultaneously." Father's Brief at 20. Father's argument is meritless.

In its opinion accompanying the subject decree, the orphans' court found that Paternal Aunt credibly testified that, "she was too stressed to read her mail [regarding receipt of a letter from the Agency] due to the death of her mother." Trial Court Opinion, 8/5/16, at 5. The court

concluded, "[t]he evidence presented documented [Paternal Aunt's] inability to deal with life stressors and the [C]hild's needs at the same time." *Id.*

By way of background, Father recommended Paternal Aunt as a placement resource for Child. N.T., 7/13/16, at 181-183. Ms. Damiani testified that she attempted to conduct a "home study" regarding Paternal Aunt, but Paternal Aunt did not respond to a letter she sent in this regard. *Id.* at 231. Paternal Aunt testified that she did not recall receiving Ms. Damiani's letter "because . . . I was going through losing my mother. . . ." N.T., 7/22/16, at 149-150.

We conclude the court's finding regarding Paternal Aunt as a prospective kinship care resource is irrelevant to its conclusion that Father's conduct warrants termination under Section 2511(a) and that termination would serve the needs and welfare of Child under Section 2511(b). Because the record supports the involuntary termination of Father's parental rights, we affirm the decree.

Decree affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/12/2017